UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                      :
MERLE BELFORD,                                        :      CASE NO. 5:05cv2650
                                                      :
        Plaintiff,                               :
                                                      :
vs.                                                   :      OPINION AND ORDER
                                                      :      [Resolving Doc. No. 34]
CITY OF AKRON, et al.,                                :
                                                      :
        Defendants.                              :
                                                      :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before the Court is the motion for summary judgment of Defendants the City of Akron, Shea Flaherty, and Scott Thomas. [Doc. 34]. The plaintiff sues the defendants under 42 U.S.C. § 1983 for injuries he received during a traffic stop on May 27, 2005. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment.

### I.  Background

Near 3:40 p.m. on May 27, 2004, Akron Police Officer Lauri Natko patrolled the vicinity of East Avenue and Carey Avenue in Akron. Several people, drivers and pedestrians, informed Officer Natko that a vehicle blocked traffic at the East and Carey intersection. Officer Natko drove to the intersection and saw a white car stopped in the intersection. Plaintiff Belford was the driver of the white car.

Natko activated her overhead lights and air horn. The car lurched forward and stopped. As

-1-

Case No. 5:05cv2650
Gwin, J.

the traffic light turned red, the car coasted into the intersection and stopped again.  Natko contacted the dispatcher to say she would make a traffic stop.  Natko exited her cruiser and approached the white car.  As she walked to the driver's side, she saw the driver slumped against the steering wheel.  Natko thought the driver was injured or passed out.  She knocked on the door to get the driver's attention, and he lifted his head to look at her.  Natko saw that his eyes were rolling and glassy.

Natko tried to open the driver's door, but it was locked.  By this point, Natko believed the driver was intoxicated.  The officer yelled through the open rear window to tell the driver to get out of the car.  Belford refused.  The car remained in drive, with its engine running, and still blocked the intersection.  Natko went around to the unlocked passenger door, and Belford cursed and incoherently threatened her.  He clumsily swiped at the officer's face as she attempted to reach for his car keys.  Although Natko claims she struggled with Plaintiff Belford, she was never injured and received no medical treatment.  Natko put the car into park and took the keys from the ignition.

Natko ordered Belford to comply.  Natko then radioed to request assistance.  Shortly after, Defendant Officer Flaherty arrived.  Natko advised Flaherty that she believed the driver was under the influence of drugs or alcohol, and that he had struggled with her.  Flaherty saw that the driver was flailing inside the car.

Officers Flaherty and Natko both approached the driver's door.  Flaherty identified himself as a police officer and ordered Belford to open his door immediately.  Belford unlocked and opened the door slightly, but then slammed it shut.  Flaherty then struggled with Belford to open the door, and eventually forced the door open.  Flaherty ordered Belford to get out of the car and raise his hands.  Belford braced himself against the steering wheel.  Flaherty grabbed Belford's left arm and again ordered him out of the car.  Belford refused.  Flaherty warned Belford that he would use OC

Case No. 5:05cv2650
Gwin, J.

spray if Belford continue to struggle. After warnings, Flaherty sprayed Belford.

Defendant Officer Thomas arrived on the scene at this point. Belford released the steering wheel after Flaherty sprayed him, and the officers forced him out of the car and onto the ground. Both Thomas and Flaherty are significantly bigger and significantly younger than Belford. Flaherty is 36 years of age, 6'2" and approximately 200 pounds while Thomas is 34 years old and weighs between 220-225 pounds. In contrast, Plaintiff Belford is 50 years old and weighs approximately 150 pounds. The officers forced Belford to lie on his stomach. Officer Thomas struggled with Belford. Although the officers easily obtained control of one of Belford's arms, he resisted their attempts to take his left arm behind his back. Thomas and Flaherty both struggled to handcuff Belford.

In response to Belford's resistence to handcuffing his left arm, Flaherty kneed Belford's thigh. Belford kept struggling, and Flaherty kneed Belford's ribs and elbow. Plaintiff Belford says Flaherty's knee to his ribs unnecessarily broke ribs, caused major internal bleeding and resulted in medical bills exceeding $20,000. In addition Flaherty used his forearm and elbow to force Belford's head to the ground. By this time, Thomas had gripped Belford's left arm, although Belford continued to struggle against having his left arm handcuffed. Although Belford gave away 15 years and 50 pounds to both Flaherty and Thomas, the officers then used a taser gun. Thomas discharged his taser gun into Belford's back. After waiting ten seconds for the taser gun to recharge, Thomas fired again. This time, Belford stopped resisting handcuffing. According to Officer Natko, Belford calmed down and became peaceful. Belford told the officers that he was diabetic. Medical personnel arrived on the scene and determined that the plaintiff had a very low blood sugar level. The medical personnel easily resolved Belford's low blood sugar.

Case No. 5:05cv2650
Gwin, J.

Because of his diabetic coma, Belford recalls little of the events leading to his detention. He suffered two broken ribs and a punctured lung during his altercation with the police, incurring approximately $20,000 in medical bills. The officers cited the plaintiff for reckless operation. City prosecutors reduced the charged to failure to control his vehicle. A jury convicted Belford of the traffic offense.

Plaintiff Belford sued the City and Officers Flaherty and Thomas in October 2005, claiming violations of his rights under the 4th, 5th, and 14th Amendments.

## II. Legal Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In seeking summary judgment, the moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether the moving party has met this burden, a court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S.

Case No. 5:05cv2650
Gwin, J.

574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some metaphysical doubt as to the material facts. *See id.* Additionally, the Court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson*, 477 U.S. at 248. The factual dispute also must be genuine. The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322.

### III. Analysis

The plaintiff sues under 42 U.S.C. § 1983, claiming that Officers Flaherty and Thomas violated his 4th Amendment right against unreasonable search and seizure, as well as his due process rights under the 5th and 14th Amendments and equal protection rights under the 14th Amendment. The plaintiff further claims that the City of Akron fails to train its police officers in how to recognize and treat diabetics. The defendants respond that the Officers acted appropriately under the circumstances and the City's training policies pass constitutional muster. While the Court agrees with the defendant that summary judgment is appropriate as to the plaintiff's claim against the City,

Case No. 5:05cv2650
Gwin, J.

the Court finds that factual issues preclude summary judgment on the excessive force claim against the officers.

*A. Excessive Force Claim*

Plaintiff Belford sues Defendants Flaherty and Thomas under section 1983 for excessive use of force. Section 1983 gives this Court jurisdiction over actions seeking recovery for constitutional deprivations suffered under the color of state law. *See Foy v. City of Berea*, 58 F.3d 227, 229 (6th Cir. 1995) ("In order to prevail in a section 1983 action, the plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal laws.").

The Fourth Amendment's prohibition of unreasonable seizures limits the amount of force police officers may use during an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Specifically, officers may use only the degree of force necessary to effect an arrest. *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997).

In *Graham,* the Supreme Court held that claims that law enforcement officers used excessive force during an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Id.* at 395. In determining the reasonableness of the force used under the Fourth Amendment, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against countervailing governmental interests at stake." *Id.* at 396.

In evaluating a particular use of force, the Court does not second-guess an officer's judgment from the comfort of chambers. Rather, the Court asks whether a reasonable officer on the scene would have employed a similar degree of force. *Smith v. Freeland*, 954 F.2d 343, 345-47 (6th Cir.

-6-

Case No. 5:05cv2650
Gwin, J.

1992); *Monday*, 118 F.3d at 1104. The facts and circumstances of each case must be measured, paying careful attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade by flight. *Graham*, 490 U.S. at 396-97.

Defendants Flaherty and Thomas say that the section 1983 claim for excessive force must be dismissed because they are immune to such claims. The doctrine of qualified immunity shields state actors from liability based on their discretionary acts. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages"). In so doing, the doctrine gives state actors the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin. *Wyatt v. Cole*, 504 U.S. 158, 167 (1992) ("Accordingly, we have recognized qualified immunity for government officials where it was necessary to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.").

Nevertheless, state actors lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known. *See Harlow*, 457 U.S. at 818 (holding that qualified immunity shields state actors only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). The doctrine thus offers no solace to "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Sixth Circuit Court of Appeals set forth a three-part test for evaluating claims of qualified immunity.

Case No. 5:05cv2650
Gwin, J.

> First, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (internal quotation marks omitted) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157–58 (6th Cir. 1996)).

Accordingly, in analyzing Belford's section 1983 claims, the Court looks first to whether Belford offers sufficient evidence of a constitutional violation. If so, the Court decides whether the violation involved a clearly established constitutional right of which a reasonable person would have known. And third, the Court examines whether the officers' actions were objectively unreasonable.

First, reasonable facts establish that a constitutional violation may have occurred. *See Dickerson,* 101 F.3d at 1157. Plaintiff Belford contends that the officers used excessive force during the arrest, in violation of his Fourth Amendment rights. Plaintiff Belford is able to show sufficient facts that support this claim. Although the plaintiff arguably resisted the officers, Officers Flaherty and Thomas used brutal force in subduing him. The plaintiff is 50 years old, stands 5'10" and weighs approximately 155 pounds. Officer Flaherty is 36, 6'2" and weighs 200 pounds. Officer Thomas is 34, 6'0', and weighs approximately 225 pounds. The two officers kneed and tasered the plaintiff after they brought him to the ground and cuffed one of his hands. At the time they kneed the plaintiff, he was prone to the ground, with one arm already handcuffed. With two officers, each weighing over 200 pounds sitting on his back, he presented no threat to anyone. The officers needlessly kneed the plaintiff at a time when all indications suggest they already controlled him and while he was in a diabetic stupor. Under these circumstances, a jury could conclude that the

-8-

Case No. 5:05cv2650
Gwin, J.

defendants used excessive force.

Second, the right to be free from excessive force is a clearly established right of which a reasonable police officer would know. "Objective legal reasonableness" is the touchstone for this determination. *Anderson*, 483 U.S. at 639. The existence of a known legal right must be adequately particularized to put potential defendants on notice. "The contours of the right must be sufficiently clear that a reasonable police officer would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. When producing evidence of a clearly established right, "a district court must find binding precedent by the Supreme Court, its court of appeals, or itself." *Russo v. Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Precedent clearly establishes the right to be free from excessive force in the context of a seizure. *Adams v. Metiva*, 31 F.3d 375, 386-387 (6th Cir. 1994). Flaherty and Thomas, as police officers, undoubtedly knew of this right.

Third, Plaintiff Belford offers sufficient facts to indicate that the officers acted unreasonably. The officers have both both the responsibility to protect the public from prisoners in police custody and the responsibility to only use the degree of force necessary. The officers detained Belford for his reckless driving, but it is not clear that Belford posed an immediate danger after they removed him from the car. Drawing all inferences in favor of the nonmoving party, Plaintiff Belford offers "sufficient facts supported by sufficient evidence" showing that the officers acted in an objectively unreasonable manner. *See Dickerson*, 101 F.3d at 1158 (quoting *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994)).

Plaintiff Belford thus makes a sufficient showing to continue with his section 1983 excessive force claim against Flaherty and Thomas. The Court denies Defendants Flaherty and Thomas's motion for summary judgment on the excessive force claim. To the extent the plaintiff alleges due

Case No. 5:05cv2650
Gwin, J.

process and equal protection violations against the officers, he fails to offer any evidence or make any argument on behalf of such claims. The Court thus grants summary judgment to Flaherty and Thomas on the due process and equal protection claims.

*B. Municipal Liability Claim*

Plaintiff Belford also claims that Defendant the City of Akron failed to adequately train its officers concerning proper police procedures governing traffic stops, arrests, and the use of force with regard to diabetic individuals. The Court grants summary judgment to the City on this claim.

The liability of local governments under section 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the local government. *See Halloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). The City can only be held liable if its "official policy," not the acts of its executives or agents, were the source of Belford's injury. *Id*. at 772. The Supreme Court has held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, "a municipality cannot be made liable by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986).

To demonstrate municipal liability under section 1983 for failure to train local government employees, it must be shown that: (1) the training program is inadequate to the tasks that officers must perform; (2) that the inadequacy is the result of the city's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury. *Kanavos v. Hardeman*,

-10-

Case No. 5:05cv2650
Gwin, J.

162 F.3d 1161 (6th Cir. 1998) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Deliberate indifference "must reflect a deliberate or conscious choice by the municipality." *City of Canton v. Harris*, 489 U.S. 378, paragraph two of the syllabus (1989).

The City argues that Plaintiff Belford does not offer evidence of (1) a constitutional violation by the officers and (2) deliberate indifference on the City's part. As discussed above, the plaintiff's offers sufficient evidence that the officers used excessive force. But the Court agrees with the City that the plaintiff does not demonstrate deliberate indifference or that any such indifference related to or caused the plaintiff's injuries.

In this case, the plaintiff offers no evidence that the City previously ignored a pattern of police using excessive force against diabetic citizens. Nor does the plaintiff show that the Akron police have a history of mistakenly identifying diabetics as inebriated. The plaintiff thus fails to make any showing of reckless indifference. *See Canton*, 378 U.S. at 392. The plaintiff also fails to demonstrate any direct causal connection between the training program and his injury. A municipality's policy or custom must be the moving force of the constitutional violation to establish the liability of the government body under section 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (1994) (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

Plaintiff Belford does not provide sufficient evidentiary support for his failure to train and supervise claims against Defendant Akron. Therefore, the Court grants the City summary judgment on the plaintiff's municipal liability claims.

IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the

-11-

Case No. 5:05cv2650
Gwin, J.

defendants' motion for summary judgment. [Doc. 34].  The Court grants summary judgment as to Defendant Akron.  The Court grants summary judgment to Defendants Flaherty and Thomas on the due process and equal protection claims, but denies summary judgment as to the excessive force claim against those defendants.

      IT IS SO ORDERED.


Dated: August 16, 2006                      s/ *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE